Joseph J. BALDINE, Plaintiff,

v.

SHARON HERALD COMPANY,
Defendant.

Civ. A. No. 65–1169.

United States District Court
W. D. Pennsylvania.

Nov. 11, 1966.

John A. Vuono, Pittsburgh, Pa., Eardley & Wentz, Chardon, Ohio, for plaintiff.

Brockway, Brockway & Kuhn, Sharon, Pa., for defendant.

## OPINION

GOURLEY, Chief Judge.

This is a political libel and defamation action arising out of a general election for the office of County Commissioner in a county of the State of Ohio, based on a political advertisement published in a newspaper in the State of Pennsylvania, the afternoon before Election Day.

█ To sustain a right to recover, actual malice must be found to exist at the time the political advertisement was published. Malice is defined as publication with knowledge of its falsity or publication with reckless disregard of whether the matters in the political advertisement were true or false.

In view of the intricacies of the proceeding the court separated liability from damages and submitted special verdicts to the jury. Findings were made that certain statements in the political advertisement were false and made with reckless disregard of their truth or falsity. However, the finding was also made that there was no actual malice.[1]

In view of the jury finding that the publication was in part false and made with reckless disregard of truth or falsi-

ty, the court construed said finding to be finding of liability.

Substantial evidence exists to support the finding that the publication was in part false as found by the jury.

I must conclude, however, that considering all the evidence and the reasonable inferences to be drawn therefrom most favorable to the plaintiff that as a matter of law the evidence is not sufficient to support the finding that the publication was made with reckless disregard of the truth or falsity of the political advertisement.

Consistent with said conclusion, the Court on the basis of Rule 50(b) of the Federal Rules of Civil Procedure entered judgment notwithstanding the verdict in favor of the defendant and against the plaintiff.

This opinion is entered in support of the conclusion and order entered by the court after jury verdict.

### ISSUE

Was or was not sufficient evidence presented to establish by the fair preponderance or weight of all the credible evidence that part of the matters in the political advertisement were false and made with reckless disregard of whether it was true or false.

---

1. State whether or not any of the matters set forth in the political advertisement of November 2, 1964, were true or false.
Answer true or false   FALSE

If you find any of the statements to be false, set forth which matters you find to be false.
You did not build the Chronically Ill Hospital as you claimed. Who did? The Trumbull County Tuberculosis Hospital Board of Trustees with a tax levy voted by Trumbull County Taxpayers and Federal Matching Funds.
What about:
Spending $10,000.00 of our tax money to hire an out of town architect to draw plans which were never used?
Spending $15,000.00 of our tax money on attorneys' fees to fight your own prosecuting attorney, unsuccessfully?
Spending at least $127,000.00 of our tax money at the Brookfield Radar Site without one cent of competitive bidding? __
If you find any of the statements to be false, state whether or not any of the

statements in the political advertisement were made with actual malice?
Answer yes or no   NO
If answer is "Yes," state which matters were published with actual malice. ____
If you find any of the statements to be false, state whether or not any of the statements in the political advertisement were made with knowledge of their falsity.
Answer yes or no   NO
If your answer is "Yes", state which matters were published with knowledge of their falsity. _____
If you find any of the statements to be false, state whether any of the statements were made with reckless disregard of whether they were true or false.
Answer yes or no   YES
If your answer is "Yes", state which matter or matters were published with reckless disregard of whether they were true or false.
Exhibit 1 A in its entirety.

The answer as to falsity is supported consistent with the burden of proof required by law—but is not supported that the political advertisement was made with reckless disregard of whether it was true or false.

The showing of malice may not be presumed but is a matter for proof by the plaintiff. Since the question is one of alleged trespass across the line between speech unconditionally guaranteed and speech which may legitimately be regulated, the court must examine for itself the statements in issue and the circumstances under which they were made to see * * * whether they are of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect.

## STATEMENT OF CASE
### Background

A very heated political campaign for the office of County Commissioner was taking place in an Ohio county. The defendant published a newspaper in Pennsylvania in which 5 per cent was circulated in Ohio. The city where the newspaper was published in Pennsylvania was adjacent and contiguous to certain voting precincts in the Ohio county. The newspaper was published each day except Sunday.

On two occasions, one of which was the Saturday before the Tuesday Election Day, plaintiff had published political advertisements in which his activities as County Commissioner during his tenure were extolled and reasons set forth why he should be continued in public office.

Sometime on Saturday a member of the Printers Union of the defendant newspaper telephoned defendant's advertising manager, read the questioned political advertisement and asked as to cost of the publication in the defendant's newspaper edition the day before the election. Said persons were each familiar with type setting and the cost was given to the person making the inquiry. The advertising manager knew of the defendant's policy to not accept controversial political advertisements a short time before election day. In view thereof, the caller was advised to bring the ad, and the publication would be discussed and approval or disapproval then made. The political advertisement was brought to the advertising manager later that day. One of the plaintiff's opponents wrote this ad and the other paid for same, each being in the opposite political party.

Consultation and discussion were had between the advertising manager and the editor. All aspects were reviewed and considered and it was decided to approve the publication. This was done since the editor believed it was in response to or in rebuttal to the two ads of the plaintiff previously published and that the editor knew three of the persons who had signed the political advertisement to be persons of reliability and reputable stature in the community. No check, calls, or inquiry were otherwise made by the editor or any other person on behalf of defendant, the newspaper.

The newspaper at no time during the political campaign editorialized any candidate for the office of County Commissioner or took any position as to the competency of any candidate nor was support given to either political party.

## APPLICABLE LAW

■ The law is settled that under the First and Fourteenth Amendments to the Constitution of the United States damages cannot be awarded to a public official for defamatory falsehood relating to his official conduct unless the official proves actual malice which means that the political advertisement falsehood was published with knowledge of its falsity *or* with reckless disregard of whether it was true or false. (New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686; Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597; New York Times v. Connor, 365 F.2d 567, Fifth Circuit.)

The motivating force for this conclusion is twofold. There is a profound

national commitment under the Constitution of the United States and to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that (such debate) may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. There is, first, a strong interest in debate about those persons who are in a position significantly to influence the resolution of those issues. Criticism of government is at the very center of the constitutionally protected area of free discussion.

Society has a pervasive and strong interest in preventing and redressing attacks upon reputation. But in cases like the present, there is tension between this interest and the values nurtured by the First and Fourteenth Amendments. The thrust of New York Times is that when interests in public discussion are particularly strong, as they were in that case, the Constitution limits the protections afforded by the law of defamation.

The protection of the opportunity for free political discussion is sacrosanct under the First Amendment, and any person who enters the political arena must knowingly subject himself to discussion which may well include vehement, caustic, and sometimes unpleasantly sharp attacks on his accomplishments and reputation as was so succinctly stated in Sweeney v. Patterson, 76 U.S.App.D.C. 23, 128 F.2d 457 (1942), cert denied, 317 U.S. 678, 63 S.Ct. 160, 87 L.Ed. 544.

The acts and course of conduct of the newspaper at the most were improvident, negligent or careless, but not in *reckless disregard* of its truth or falsity, and is, therefore, constitutionally insufficient to sustain the political libel and defamation claim.

I must conclude that the proof presented to show actual malice or that the publication was made in reckless disregard of whether the publication was true or false lacks the convincing clarity which the constitutional standard demands.

The test which was laid down in New York Times is not keyed to ordinary care; defeasance of the privilege is conditioned, not on mere negligence, but on reckless disregard for the truth. (New York Times v. Connor, 365 F.2d 567, Fifth Circuit)

An appropriate Order is entered.